IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**GARY W. BECKHAM**                                                                  **PLAINTIFF**

**V.**                    **NO. 4:17-CV-564-DPM-BD**

**COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION**                       **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Judge D. P. Marshall Jr. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for the objection.

To be considered, all objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

### I. Introduction:

On August 19, 2014, Gary W. Beckham applied for disability benefits, alleging disability beginning November 10, 2013. (Tr. at 41) Mr. Beckham's claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Beckham's application. (Tr. at 51) Mr. Beckham requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Mr. Beckham filed this case seeking judicial review of the decision

denying him benefits.

## II. The Commissioner's Decision:

The ALJ found that Mr. Beckham had not engaged in substantial gainful activity since the onset of his alleged disability, November 10, 2013. (Tr. at 43) At step two of the five-step analysis, the ALJ found that Mr. Beckham had the following severe impairments: obesity, hypertension, peripheral neuropathy, diabetes mellitus, arthropathy, somatoform disorder, alcohol and substance abuse disorder, personality disorders, anxiety, and affective disorders. *Id.*

After finding that Mr. Beckham's impairments did not meet or equal a listed impairment (Tr. at 44), the ALJ determined that Mr. Beckham had the residual functional capacity ("RFC") to perform a full range of sedentary work, with some limitations. (Tr. at 46) He could only occasionally stoop, crouch, crawl, and knee; and could only occasionally reach overhead with the dominant upper extremity. *Id*. He further limited him to work where interpersonal contact is incidental to the work performed, and the complexity of tasks could be learned within 30 days by demonstration or repetition. Further, he was limited to tasks with only few variables that require little judgment and simple, direct, and concrete supervision. *Id*.

The ALJ found that Mr. Beckham was unable to perform any of his past relevant work. (Tr. at 50) At step five, however, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, after considering Mr. Beckham's age, education, work experience and RFC, that he was capable of performing work in the national economy as basic table worker and paster and cutter of small component parts. (Tr. at 51) The ALJ determined,

therefore, that Mr. Beckham was not disabled. *Id.*

## III. <u>Discussion</u>:

    A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support he ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted). In making its determination, the Court must consider not only evidence that supports the Commissioner's decision, but also, evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    B. Mr. Beckham's Arguments on Appeal

In this appeal, Mr. Beckham contends that the ALJ's decision to deny benefits is not supported by substantial evidence. He argues that the ALJ should have given more weight to the opinion of Dr. Samuel Hester, Ph.D.; that the jobs identified by the VE do not exist in significant numbers in the national economy; and that the ALJ's credibility finding was flawed.

Mr. Beckham focuses his argument on his shoulder injury and mental impairments. According to his medical records, he complained of shoulder pain as early

as July 22, 2013, but a clinical exam on that date showed normal motor strength in the shoulder with normal tone in all extremities. (Tr. at 562). Normal findings do not support Mr. Beckham's complaints of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Mr. Beckham did tell his doctor that he couldn't afford physical therapy for his shoulder. (Tr. at 561). His doctor noted, however, that Mr. Beckham had not been compliant in taking his medication and that he did not follow up on treatment recommendations. (Tr. at 561, 564). A failure to follow a recommended course of treatment weighs against a claimant's credibility in assessing allegations of pain. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)

At an October 1, 2013 examination, Mr. Beckham's shoulder appeared normal, with no acute injury. (Tr. at 588). An October 3, 2013 MRI of the shoulder showed no rotator cuff tear, but did show tendinitis and fraying of the superior labrum. (Tr. at 586). Mr. Beckham did not seek a pain management specialist or surgical intervention, and he did not attend physical therapy. Conservative treatment further contradicts Mr. Beckham's allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Mr. Beckham suffered mental health impairments. In fact, in July of 2015 and November of 2015, he was hospitalized for suicidal ideations. (Tr. at 841-942, 987-991). In July of 2015, the hospital psychiatrist noted that Mr. Beckham had improved with

medication and that, upon discharge, his speech was clear and his thought process was relevant and goal directed. (Tr. at 880, 923). His associations were intact, and he had no abnormal thought content. *Id*. He stated that he was looking forward to reconnecting with his children. (Tr. at 888). At discharge from his November 2015 hospitalization, Mr. Beckham showed significant improvement and was considered stable. (Tr. at 991). The report of improvement supports the ALJ's finding that Mr. Beckham was not disabled. *See Locher v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

Mr. Beckham sought counseling for affective disorder, depression, and anger issues, and was treated with Prozac, Risperidone, Doxepin, and Klonopin. (Tr. at 48). His provider noted, however, that Mr. Beckham failed to show up for appointments. (Tr. at 745). As with failure to comply with treatment recommendations, the failure to keep doctors' appointments undermines Mr. Beckham's credibility. *Locher*, 968 F.2d at 729.

Moreover, the record reflect that Mr. Beckham abused alcohol and drugs throughout the relevant time-period, but denied such use until confronted with positive drug screens. (Tr. at 539). Although Mr. Beckham did not think his drug use was a problem and "was not interested in advice" from his doctor, the ALJ could properly consider Mr. Beckham's regular use of illicit drugs in addition to his failure to take psychiatric medications that had proved effective. *Id.*

Dr. Samuel Hester, Ph.D., administered a mental diagnostic examination to Mr. Beckham on February 13, 2015. (Tr. at 674). While Mr. Beckham had previously told

5

doctors that he frequently lost his temper and had a history of violence, he reported to Dr. Hester that he had never lost a job due to mental health issues and had no problems interacting with supervisors or coworkers. (Tr. at 676). At the exam, Mr. Beckham reportedly displayed a good attitude and was cooperative; his speech was normal; and his thought process was logical. (Tr. at 676-677). He performed mathematical tasks with ease. (Tr. at 678).

Dr. Hester concluded that Mr. Beckham would have no difficulty with communication and interaction, and that he could cope with mental demands of basic work tasks. (Tr. at 679-680). He did note that Mr. Beckham "may" not be able to complete work tasks within an acceptable timeframe, but this opinion is at odds with his observation that Mr. Beckham was able to complete math tasks with ease.

When Mr. Beckham argues that Dr. Hester's opinion should have been given more weight, he emphasizes Dr. Hester's suggestion that he *might* have trouble completing tasks. But, as the Eighth Circuit has held, "physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams*, 393 F.3d at 803. Mr. Beckham performed well for Dr. Hester, so his conclusion Mr. Beckham *might* have trouble completing tasks was not entitled to more weight than the ALJ afforded it.

Mr. Beckham further argues his RFC should have included his possible problem in completing tasks, based upon Dr. Hester's report. An ALJ is charged with examining and

6

weighing medical opinions to determine the RFC, and the RFC must be consistent with the record as a whole. Where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while discounting portions of the opinion that are not supported elsewhere in the record. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Here, the ALJ incorporated the opinions of Dr. Hester and the two state-agency psychiatric consultants (Tr. at 271, 292), and appropriately considered the other mental health records. He properly assessed Dr. Hester's opinion in conjunction with other evidence, including noncompliance with treatment, illicit drug use, improvement upon hospital discharge, and generally normal mental status examinations. The weight afforded Dr. Hester's opinion was not erroneous.

Mr. Beckham also asserts that the jobs identified by the VE did not exist in significant numbers so as to meet the Commissioner's step-five burden. The VE identified 14,700 jobs in the national economy that Mr. Beckham could perform. (Tr. at 254) In this Circuit, "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). And while Mr. Beckham argues that the VE failed to identify significant numbers in this region, the standard contemplates available jobs in the national economy, meaning, "work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis supplied).

7

The ALJ met his burden at step five.

Finally, Mr. Beckham challenges the ALJ's credibility analysis. Prior to March 28, 2016, an ALJ was required to discuss certain factors in determining credibility.[1] Since then, however, the Administration has rescinded the ruling that required a strict *Polaski* analysis:

> SSR 16-3p, 2016 SSR LEXIS 4 rescinded a previous Social Security Ruling that concerned the credibility of a claimant. SSR 16-3p, 2016 SSR LEXIS 4, 82 Fed. Reg. 49, 462, 49, 463 (Oct. 25, 2017). SSR 16-3p, 2016 SSR LEXIS 4 removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's regulations did not use the term. *Id*. SSR 16-3p, 2016 SSR LEXIS 4 clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id.* Step One is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at 49, 463-64. Step Two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id*. at 49, 464-66.

*Contreras-Zambrano v. SSA*, 2018 U.S. App. LEXIS 2531 *7 (11th Cir. January 30, 2018). Now, the determination or decision must list reasons for the weight given to the individual's symptoms; must be consistent; must be supported by the evidence; and must be articulated in a way that the individual and subsequent reviewers can assess how the

---

[1] Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

adjudicator evaluated the individual's symptoms. SSR 16-3p, 2016 SSR LEXIS 4; *Palmer v. Colvin*, 2017 U.S. Dist. LEXIS 41 *22 (W.D. Mo. Jan 3, 2017). In evaluating whether subjective complaints are consistent with the medical evidence, however, factors such as those outlined in *Polaski* remain informative.

In this case, the ALJ fully considered Mr. Beckham's subjective complaints, but articulated good reasons for discounting the severity of those complaints. As noted, Mr. Beckham did not take his medication as prescribed and missed counseling appointments. He improved with treatment; and his mental condition upon leaving the psychiatric hospital was good. He performed well on the diagnostic exam, and the examiner found, at most, mild limitations. Objective imaging of Mr. Beckham's shoulder showed only minor problems. The ALJ's credibility determination, based on the entire record, was not erroneous.

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision that Mr. Beckham was not disabled. The ALJ gave appropriate weight to Dr. Hester's opinion; the VE identified a sufficient number of jobs at step five; and the ALJ's credibility analysis was proper. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 27th day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE